IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br>Department of Justice, Antitrust Division<br>1401 H Street, N.W., Suite 8000<br>Washington, D.C. 20530,<br><br>and<br><br>STATE OF VERMONT<br>Office of the Vermont Attorney General<br>109 State Street<br>Montpelier, Vermont  05609-1001<br><br>*Plaintiffs*,<br><br>v.<br><br>VERIZON COMMUNICATIONS INC.<br>140 West Street<br>New York, New York 1007<br><br>and<br><br>RURAL CELLULAR CORPORATION<br>3905 Dakota Street SW<br>Alexandria, Minnesota 56308,<br><br>*Defendants*. | Civil No.<br><br>Filed: |

**COMPLAINT**

The United States of America, acting under the direction of the Attorney General of the United States, and the State of Vermont, by its Attorney General William H. Sorrell, bring this civil action to enjoin the merger of two mobile wireless telecommunications services providers, Verizon Communications Inc. ("Verizon") and Rural Cellular Corporation ("RCC"), and to obtain other relief as appropriate.  Plaintiffs allege as follows:

1.     Verizon entered into an agreement to acquire RCC, dated July 29, 2007, under

which the two companies would combine their mobile wireless telecommunications services businesses ("Transaction Agreement"). Plaintiffs seek to enjoin this transaction because it likely will substantially lessen competition to provide mobile wireless telecommunications services in several geographic markets where Verizon and RCC are each other's most significant competitor.

2. Verizon's mobile wireless telecommunications services network covers 263 million people in 49 states and serves in excess of 65 million subscribers. RCC provides mobile wireless telecommunications services in 15 states and serves approximately 790,000 subscribers. The combination of Verizon and RCC likely will substantially lessen competition for mobile wireless telecommunications services throughout Vermont, one geographic area in New York that is contiguous to Vermont, and in northeast Washington, where both Verizon and RCC currently operate. As a result of the proposed acquisition, residents of these areas will likely face increased prices, diminished quality or quantity of services, and less investment in network improvements for these services.

## I. JURISDICTION AND VENUE

3. This Complaint is filed by the United States under Section 15 of the Clayton Act, 15 U.S.C. § 25, to prevent and restrain defendants from violating Section 7 of the Clayton Act, as amended, 15 U.S.C. § 18. Plaintiff Vermont, by and through its Attorney General, brings this action in its sovereign capacity and as parens patriae on behalf of the citizens, general welfare, and economy of the State of Vermont under Section 16 of the Clayton Act, 15 U.S.C. § 26, to prevent defendants from violating Section 7 of the Clayton Act, 15 U.S.C. § 18.

4. Verizon and RCC are engaged in interstate commerce and in activities substantially affecting interstate commerce. The Court has jurisdiction over this action pursuant to Sections 15 and 16 of the Clayton Act, 15 U.S.C. §§ 25 and 26, and 28 U.S.C. §§ 1331 and 1337.

5. The defendants have consented to personal jurisdiction and venue in this judicial district.

## II. THE DEFENDANTS AND THE TRANSACTION

6. Verizon, with headquarters in New York, is a corporation organized and existing under the laws of the State of Delaware. Verizon is one of the world's largest providers of communications services. Verizon is the second largest mobile wireless telecommunications services provider in the United States as measured by subscribers, provides mobile wireless telecommunications services in 49 states, and serves in excess of 65 million subscribers. In 2007, Verizon earned mobile wireless telecommunications services revenues of approximately $43 billion.

7. RCC, with headquarters in Alexandria, Minnesota, is a corporation organized and existing under the laws of the State of Minnesota. RCC is the 10th largest mobile wireless telecommunications services provider in the United States as measured by subscribers, and provides mobile wireless telecommunications services in 15 states. It has approximately 790,000 subscribers. In 2007, RCC earned approximately $635.3 million in revenues.

8. Pursuant to an Agreement and Plan of Merger dated July 29, 2007, Verizon will acquire RCC for approximately $2.67 billion. If this transaction is consummated, Verizon and

RCC combined would have approximately 66 million subscribers in the United States, with $44 billion in mobile wireless telecommunications services revenues.

### III. TRADE AND COMMERCE

#### A. Nature of Trade and Commerce

9. Mobile wireless telecommunications services allow customers to make and receive telephone calls and obtain data services using radio transmissions without being confined to a small area during the call or data session, and without the need for unobstructed line-of-sight to the radio tower. Mobility is highly valued by customers, as demonstrated by the more than 255 million people in the United States who own mobile wireless telephones. In 2007, revenues from the sale of mobile wireless telecommunications services in the United States were over $138 billion. To meet this desire for mobility, mobile wireless telecommunications services providers must deploy extensive networks of switches and radio transmitters and receivers and interconnect their networks with the networks of wireline carriers and other mobile wireless telecommunications services providers.

10. In the early to mid-1980s, the FCC issued two cellular licenses (A-block and B-block) in each Metropolitan Statistical Area ("MSA") and Rural Service Area ("RSA") (collectively, "Cellular Marketing Areas" or "CMAs"), with a total of 734 CMAs covering the entire United States. Each license consists of 25 MHz of spectrum in the 800 MHz band. The first mobile wireless voice systems using this cellular spectrum were based on analog technology, now referred to as first-generation or "1G" technology.

11. In 1995, the FCC licensed additional spectrum for the provision of Personal Communications Services ("PCS"), a category of services that includes mobile wireless

telecommunications services comparable to those offered by cellular licensees. These licenses are in the 1900 MHz band and are divided into six blocks: A, B, and C, which consist of 30 MHz each; and D, E, and F, which consist of 10 MHz each. Geographically, the A and B-block 30 MHz licenses are issued by Major Trading Areas ("MTAs"). C, D, E, and F-block licenses are issued by Basic Trading Areas ("BTAs"), several of which comprise each MTA. MTAs and BTAs do not generally correspond to MSAs and RSAs.

12. With the introduction of the PCS licenses, both cellular and PCS licensees began offering digital services, thereby increasing network capacity, shrinking handsets, and extending battery life. In addition, in 1996, one provider, a specialized mobile radio ("SMR" or "dispatch") spectrum licensee, began to use its SMR spectrum to offer mobile wireless telecommunications services comparable to those offered by other mobile wireless telecommunications services providers, in conjunction with its dispatch, or "push-to-talk," service. Although there are a number of providers holding spectrum licenses in each area of the country, not all providers have fully built out their networks throughout each license area. In particular, because of the characteristics of PCS spectrum, providers holding this type of spectrum generally have found it less attractive to build out in rural areas.

13. Today, more than 95 percent of the total U.S. population lives in counties where three or more mobile wireless telecommunications services operators offer service. Nearly all mobile wireless voice services have migrated to second-generation or "2G" digital technologies, GSM (global standard for mobility), and CDMA (code division multiple access). Even more advanced technologies ("2.5G" and "3G"), based on the earlier 2G technologies, have been deployed for mobile wireless data services.

**B.    Relevant Product Market**

14.    Mobile wireless telecommunications services is a relevant product market. Mobile wireless telecommunications services include both voice and data services provided over a radio network and allow customers to maintain their telephone calls or data sessions without wires when traveling. There are no cost-effective alternatives to mobile wireless telecommunications services. Because fixed wireless services are not mobile, they are not regarded by consumers of mobile wireless telecommunications services to be a reasonable substitute for those services. It is unlikely that a sufficient number of customers would switch away from mobile wireless telecommunications services to make a small but significant price increase in those services unprofitable. Mobile wireless telecommunications services accordingly is a relevant product market under Section 7 of the Clayton Act, 15 U.S.C. § 18.

**C.    Relevant Geographic Markets**

15.    The United States comprises numerous local geographic markets for mobile wireless telecommunications services. A large majority of customers use mobile wireless telecommunications services in close proximity to their workplaces and homes. Thus, customers purchasing mobile wireless telecommunications services choose among mobile wireless telecommunications services providers that offer services where they live, work, and travel on a regular basis. The geographic areas in which the FCC has licensed mobile wireless telecommunications services providers often represent the core of the business and social sphere within which customers have the same competitive choices for mobile wireless telephone services. The number and identity of mobile wireless telecommunications services providers varies among geographic areas, as does the quality of services and breadth of geographic

coverage offered by providers. Some mobile wireless telecommunications services providers can and do offer different promotions, discounts, calling plans, and equipment subsidies in different geographic areas, varying the price for customers by geographic area.

16. The relevant geographic markets, under Section 7 of the Clayton Act, 15 U.S.C. §18, where the transaction will substantially lessen competition for mobile wireless telecommunications services are effectively represented by the following FCC spectrum licensing areas: Burlington, Vermont (CMA 248); New York RSA-2 (CMA 560); Vermont RSA-1 (CMA 679); Vermont RSA-2 (CMA 680); Washington RSA-2 (CMA 694); and Washington RSA-3 (CMA 695). It is unlikely that a sufficient number of customers would switch to mobile wireless telecommunications services providers who do not offer services in these geographic areas to make a small but significant price increase in the relevant geographic markets unprofitable.

**D.  Anticompetitive Effects**

    **1.  Mobile Wireless Telecommunications Services**

17. In each of the cellular license areas described above, Verizon and RCC are the two largest carriers (based on subscribers), with a combined share in each area ranging from over 60% to nearly 94%, and are each other's closest competitor for a significant set of customers. In all but a portion of one of these cellular license areas, Verizon and RCC hold all of the cellular spectrum licenses.

18. The relevant geographic markets for mobile wireless services are highly concentrated. As measured by the Herfindahl-Hirschman Index ("HHI"), which is commonly employed in merger analysis and is defined and explained in Appendix A to this Complaint,

concentration in these geographic areas ranges from over 2800 to more than 5100, which is well above the 1800 threshold at which plaintiffs consider a market to be highly concentrated. After Verizon's proposed acquisition of RCC is consummated, the HHIs in the relevant geographic areas will range from over 4900 to over 8700, with increases in the HHI as a result of the merger ranging from over 1200 to over 4200, significantly beyond the thresholds at which plaintiffs consider a transaction likely to cause competitive harm.

19. Competition between Verizon and RCC in the relevant geographic markets has resulted in lower prices and higher quality in mobile wireless telecommunications services than would otherwise have existed in these geographic markets. In these areas, consumers consider Verizon and RCC to be particularly attractive competitors because other providers' networks lack coverage or provide lower-quality service. If Verizon's proposed acquisition of RCC is consummated, competition between Verizon and RCC in mobile wireless telecommunications services will be eliminated in these markets and the relevant markets for mobile wireless telecommunications services will become substantially more concentrated. As a result, the loss of competition between Verizon and RCC increases the merged firm's incentive and ability in the relevant geographic markets to increase prices, diminish the quality or quantity of services provided, and refrain from or delay making investments in network improvements.

### 2. Entry

20. Entry by a new mobile wireless services provider in the relevant geographic markets would be difficult, time-consuming, and expensive, requiring spectrum licenses and the build out of a network. Therefore, any entry in response to a small but significant price increase for mobile wireless telecommunications services by the merged firm in the relevant geographic

markets would not be timely, likely, or sufficient to thwart the competitive harm resulting from Verizon's proposed acquisition of RCC, if it were to be consummated.

## IV. VIOLATION ALLEGED

21. The effect of Verizon's proposed acquisition of RCC, if it were to be consummated, may be substantially to lessen competition in interstate trade and commerce in the relevant geographic markets for mobile wireless telecommunications services, in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18.

22. Unless restrained, the transaction will likely have the following effects in mobile wireless telecommunications services in the relevant geographic markets, among others:

   a. actual and potential competition between Verizon and RCC will be eliminated;

   b. competition in general will be lessened substantially;

   c. prices are likely to increase;

   d. the quality and quantity of services are likely to decrease; and

   e. incentives to improve wireless networks will be reduced.

## V. REQUESTED RELIEF

The plaintiffs request:

23. That Verizon's proposed acquisition of RCC be adjudged to violate Section 7 of the Clayton Act, 15 U.S.C. § 18;

24. That defendants be permanently enjoined from and restrained from carrying out the Agreement and Plan of Merger dated July 29, 2007, or from entering into or carrying out any

agreement, understanding, or plan, the effect of which would be to bring the wireless services businesses of Verizon and RCC under common ownership or control;

25. That plaintiffs be awarded their costs of this action; and

26. That plaintiffs have such other relief as the Court may deem just and proper.

Dated: June 10, 2008

Respectfully Submitted,

FOR PLAINTIFF UNITED STATES OF AMERICA:

Thomas O. Barnett
Assistant Attorney General
Antitrust Division

Deborah A. Garza
Deputy Assistant Attorney General
Antitrust Division

Patricia A. Brink
Deputy Director of Operations
Antitrust Division

Nancy Goodman
Chief, Telecommunications & Media
Enforcement Section
Antitrust Division

Laury Bobbish
Assistant Chief, Telecommunications &
Media Enforcement Section
Antitrust Division

Hillary B. Burchuk (DC Bar No. 366755)
Lawrence M. Frankel (DC Bar No. 441532)
Jared A. Hughes
Deborah Roy (DC Bar No. 452573)

Attorneys, Telecommunications & Media
Enforcement Section
Antitrust Division
U.S. Department of Justice
City Center Building
1401 H Street, N.W., Suite 8000
Washington, D.C. 20530
Phone: (202) 514-5621
Facsimile: (202) 514-6381

FOR PLAINTIFF STATE OF VERMONT:

WILLIAM H. SORRELL
Vermont Attorney General

*/s/ Julie Brill*

Julie Brill
Assistant Attorney General and
Director, Antitrust

Jennifer Giaimo
Assistant Attorney General

Office of the Vermont Attorney General
109 State Street
Montpelier, Vermont 05609-1001
(802) 828-3658
Facsimile: (802) 828-2154

11

# APPENDIX A

## Herfindahl-Hirschman Index

"HHI" means the Herfindahl-Hirschman Index, a commonly accepted measure of market concentration. It is calculated by squaring the market share of each firm competing in the market and then summing the resulting numbers. For example, for a market consisting of four firms with shares of 30, 30, 20, and 20 percent, the HHI is 2600 ($30^2 + 30^2 + 20^2 + 20^2 = 2600$). (Note: Throughout the Complaint, market share percentages have been rounded to the nearest whole number, but HHIs have been estimated using unrounded percentages in order to accurately reflect the concentration of the various markets.) The HHI takes into account the relative size distribution of the firms in a market and approaches zero when a market consists of a large number of small firms. The HHI increases both as the number of firms in the market decreases and as the disparity in size between those firms increases.

Markets in which the HHI is between 1000 and 1800 points are considered to be moderately concentrated, and those in which the HHI is in excess of 1800 points are considered to be highly concentrated. *See Horizontal Merger Guidelines* ¶ 1.51 (revised Apr. 8, 1997). Transactions that increase the HHI by more than 100 points in concentrated markets presumptively raise antitrust concerns under the guidelines issued by the U.S. Department of Justice and Federal Trade Commission. *See id.*

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS

United States of America, State of Vermont

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Hillary Burchuk
US Dept. of Justice, Antitrust Div.
1401 H Street, NW, Suite 8000
Washington, D.C. 20530
(202) 514- 4853

Julie Brill
Office of the Vermont Atty. Gen.
109 State Street
Montpelier, VT 05609
(802)828-3658

## DEFENDANTS

Verizon Communications Inc., Rural Cellular Corporation

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  New York, NY
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

ATTORNEYS (IF KNOWN)

John Thorne, David Wheeler
Verizon Communications Inc.
1515 N. Courthouse Rd
Arlington, VA 22201
(703) 351-3900

Michael Weiner, Brain Mohr
Skadden, Arps, Slate, Meagher & Flom
Four Times Square
New York, NY 10036
(212) 735-2632

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ● 1 U.S. Government Plaintiff
- ○ 2 U.S. Government Defendant
- ○ 3 Federal Question (U.S. Government Not a Party)
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

### ○ A. Antitrust
- [X] 410 Antitrust

### ○ B. Personal Injury/Malpractice
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

### ○ C. Administrative Agency Review
- ☐ 151 Medicare Act

Social Security:
- ☐ 861 HIA ((1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g)

Other Statutes
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ○ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ○ E. General Civil (Other)    OR    ○ F. Pro Se General Civil

**Real Property**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**Personal Property**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**Bankruptcy**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**Property Rights**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**Federal Tax Suits**
- ☐ 870 Taxes (US plaintiff or defendant)
- ☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**Other Statutes**
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
- ● 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
Section 7 of the Clayton Act, 15 U.S.C. The contemplated transaction will likely result in less competition for wireless services in six markets.

**VII. REQUESTED IN COMPLAINT**  CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 ☐   DEMAND $ _____   Check YES only if demanded in complaint   JURY DEMAND:  YES ☐   NO ☒

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE June 10, 2008     SIGNATURE OF ATTORNEY OF RECORD  *Hillary Burchuk*

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.