IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA and STATE OF VERMONT, <br><br> *Plaintiffs,* <br><br> v. <br><br> VERIZON COMMUNICATIONS INC. and RURAL CELLULAR CORPORATION, <br><br> *Defendants.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No.  $08 - 993$

Filed:

## PRESERVATION OF ASSETS STIPULATION AND ORDER

It is hereby stipulated and agreed by and between the undersigned parties, subject to approval and entry by the Court, that:

### I. DEFINITIONS

As used in this Preservation of Assets Stipulation and Order:

A. "Acquirer" or "Acquirers" means the entity or entities to whom defendants divest the Divestiture Assets.

B. "CMA" means cellular market area which is used by the Federal Communications Commission ("FCC") to define cellular license areas and which consists of Metropolitan Statistical Areas ("MSAs") and Rural Service Areas ("RSAs").

C. "Divestiture Assets" means each mobile wireless telecommunications services business to be divested under this Final Judgment, including all types of assets, tangible and intangible, used by defendants in the operation of the mobile wireless telecommunications

services businesses to be divested. "Divestiture Assets" shall be construed broadly to accomplish the complete divestiture of the entire business of RCC in each of the following CMA license areas as required by this Final Judgment and to ensure that the divested mobile wireless telecommunications services businesses remain viable, ongoing businesses:

> (1) Burlington, VT MSA (CMA 248);
>
> (2) New York RSA 2 (CMA 560);
>
> (3) Vermont RSA 1 (CMA 679);
>
> (4) Vermont RSA 2 (CMA 680);
>
> (5) Washington RSA 2 (CMA 694); and
>
> (6) Washington RSA 3 (CMA 695)

provided that defendants may retain all of the PCS spectrum licenses RCC currently holds in each of these CMAs, except in the Burlington MSA, and equipment that is used only for wireless transmissions over this PCS spectrum. Defendants may also retain the Ericsson AXE 810 switch located in Colchester, VT used to support the GSM mobile wireless telecommunications services currently provided by RCC; the Lucent 5E switch located in Colchester, VT used to support CDMA, TDMA and analog mobile wireless telecommunications services currently provided by RCC; the CDMA, TDMA and analog equipment on the radio tower located at Woodstock (latitude 43.613975, longitude -72.52175) and any associated rights for this equipment to remain on this tower currently owned and held by RCC; and the CDMA equipment located on the radio tower located at Stratton (latitude 43.11344, longitude -72.90691) and any associated rights for this equipment to remain on this tower currently owned and held by RCC. In addition, defendants also (i) may retain in the Burlington MSA, RCC's PCS spectrum license, and (ii) in

2

the Vermont RSA 2-B2 service area, which includes Bennington and Windham counties, and the

portion of Windsor county south of U.S. Route 4, may substitute a license for 10 MHz of RCC's

cellular spectrum for RCC's 10 MHz PCS spectrum license, if approved by plaintiff United

States in its sole discretion, upon consultation with plaintiff Vermont.

The Divestiture Assets shall include, without limitation, all types of real and personal

property, monies and financial instruments, equipment, inventory, office furniture, fixed assets

and furnishings, supplies and materials, contracts, agreements, leases, commitments, spectrum

licenses issued by the FCC and all other licenses, permits and authorizations, operational support

systems, cell sites, network infrastructure, switches, customer support and billing systems,

interfaces with other service providers, business and customer records and information, customer

contracts, customer lists, credit records, accounts, and historic and current business plans which

relate primarily to the wireless businesses being divested, as well as any patents, licenses, sub-

licenses, trade secrets, know-how, drawings, blueprints, designs, technical and quality

specifications and protocols, quality assurance and control procedures, manuals and other

technical information defendant RCC supplies to its own employees, customers, suppliers,

agents, or licensees, and trademarks, trade names and service marks or other intellectual property,

including all intellectual property rights under third-party licenses that are capable of being

transferred to the Acquirer(s) either in their entirety, for assets described in (a) below, or through

a license obtained through or from RCC, for assets described in (b) below; provided that

defendants shall only be required to divest Multi-line Business Customer contracts if the primary

business address for that customer is located within any of the six license areas described herein,

and further, any subscriber who obtains mobile wireless telecommunications services through

any such contract retained by defendants and who are located within the six license areas identified above, shall be given the option to terminate their relationship with defendants, without financial cost, at any time within one year of the closing of the Transaction. Defendants shall provide written notice to these subscribers within 45 days after the closing of the Transaction of the option to terminate.

The divestiture of the Divestiture Assets shall be accomplished by:

(a)     transferring to the Acquirer(s) the complete ownership and/or other rights to the assets (other than those assets used substantially in the operations of RCC's overall wireless telecommunications services business which must be retained to continue the existing operations of the wireless properties that defendants are not required to divest, and that either are not capable of being divided between the divested wireless telecommunications services businesses and those not divested, or are assets that the defendants and the Acquirer(s) agree, subject to the approval of plaintiff United States, shall not be divided); and

(b)     granting to the Acquirer(s) an option to obtain a nonexclusive, transferable license from defendants for a reasonable period, subject to the approval of plaintiff United States, and at the election of the Acquirer(s), to use any of RCC's retained assets under paragraph (a) above used in operating the mobile wireless telecommunications services businesses being divested, so as to enable the Acquirer(s) to continue to operate the divested mobile wireless telecommunications services businesses without impairment.

4

Defendants shall identify in a schedule submitted to plaintiff United States and filed with the Court as expeditiously as possible following the filing of the Complaint, and in any event prior to any divestiture and before the approval by the Court of this Final Judgment, any and all intellectual property rights under third-party licenses that are used by the mobile wireless telecommunications services businesses being divested that defendants could not transfer to the Acquirer(s) entirely or by license without third-party consent, the specific reasons why such consent is necessary, and how such consent would be obtained for each asset.

D. "Multi-line Business Customer" means a corporate or business customer that contracts with RCC for mobile wireless telecommunications services to provide multiple telephones to its employees or members whose services are provided pursuant to a contract with the corporate or business customer.

E. "RCC" means defendant Rural Cellular Corporation, a Minnesota corporation with its headquarters in Alexandria, Minnesota, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

F. "Transaction" means the Agreement and Plan of Merger, dated July 29, 2007.

G. "Verizon" means defendant Verizon Communications Inc., a Delaware corporation, with its headquarters in New York, New York, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

5

## II. OBJECTIVES

The proposed Final Judgment filed in this case is meant to ensure defendants' prompt

divestiture of the Divestiture Assets for the purpose of preserving viable competitors in the

provision of mobile wireless telecommunications services in order to remedy the effects that the

plaintiffs allege would otherwise result from Verizon's acquisition of RCC. This Preservation of

Assets Stipulation and Order ensures, prior to such divestitures, that competition is maintained

during the pendency of the ordered divestitures, and that, if the Divestiture Assets are placed in a

Management Trust, the Divestiture Assets remain ongoing business concerns and the Divestiture

Assets remain economically viable. The Divestiture Assets will remain, as provided herein,

preserved, independent and uninfluenced by defendants.

## III. JURISDICTION AND VENUE

This Court has jurisdiction over the subject matter of this action and each of the parties

hereto, and venue of this action is proper in the United States District Court for the District of

Columbia. The Complaint states a claim upon which relief may be granted against defendants

under Section 7 of the Clayton Act, as amended (15 U.S.C. § 18).

## IV. COMPLIANCE WITH AND ENTRY OF FINAL JUDGMENT

A. The parties stipulate that a proposed Final Judgment in the form attached hereto as

Exhibit A may be filed with and entered by the Court, upon the motion of any party or upon the

Court's own motion, at any time after compliance with the requirements of the Antitrust

Procedures and Penalties Act, 15 U.S.C. § 16, and without further notice to any party or other

proceedings, provided that plaintiff United States has not withdrawn its consent, which it may do

at any time before the entry of the proposed Final Judgment by serving notice thereof on

defendants and by filing that notice with the Court.

B. Defendants shall abide by and comply with the provisions of the proposed Final

Judgment, pending the Judgment's entry by the Court, or until expiration of time for all appeals

of any Court ruling declining entry of the proposed Final Judgment. Defendants shall, from the

date of the signing of this Stipulation by the parties, comply with all the terms and provisions of

the proposed Final Judgment as though the same were in full force and effect as an order of the

Court.

C. Defendants shall not consummate the Transaction sought to be enjoined by the

Complaint herein before (1) the Court has signed this Preservation of Assets Stipulation and

Order and (2) one of the following conditions has been met:

(a) the Court has ruled on any Motion to Appoint a Management Trustee filed by plaintiff

United States and 15 days have passed since the appointment of a Management Trustee,

provided however that plaintiff United States, in its sole discretion, may waive or shorten

the 15 day period if defendants have provided to the Management Trustee all information

required by this Stipulation and that is necessary for the Management Trustee to

successfully operate the Divestiture Assets; or

(b) defendants have entered into agreements, which will be consummated before or

simultaneously with the consummation of the Transaction, to sell the Divestiture Assets

in a manner consistent with the proposed Final Judgment to an Acquirer(s) acceptable to

plaintiff United States in its sole discretion, and with respect to Divestiture Assets located

in Vermont upon consultation with plaintiff Vermont and the Divestiture Assets are

7

transferred to the Acquirer(s) before or simultaneously with the consummation of the Transaction.

D. This Stipulation shall apply with equal force and effect to any amended proposed Final Judgment agreed upon in writing by the parties and submitted to the Court.

E. In the event (1) plaintiff United States has withdrawn its consent, as provided in Section IV.A above, or (2) the proposed Final Judgment is not entered pursuant to this Stipulation, the time has expired for all appeals of any Court ruling declining entry of the proposed Final Judgment, and the Court has not otherwise ordered continued compliance with the terms and provisions of the proposed Final Judgment, then the parties are released from all further obligations under this Stipulation, and the making of this Stipulation shall be without prejudice to any party in this or any other proceeding.

F. Defendants represent that the divestitures ordered in the proposed Final Judgment can and will be made, and that defendants will later raise no claim of mistake, hardship or difficulty of compliance as grounds for asking the Court to modify any of the provisions contained therein.

### V. MANAGEMENT TRUSTEE

A. If defendants have not satisfied Section IV.C(2)(b) of this Stipulation when this Stipulation is filed, the Court shall, upon application of plaintiff United States, and with respect to Divestiture Assets located in Vermont upon consultation with plaintiff Vermont, appoint a Management Trustee who will serve as manager of the Divestiture Assets until the Divestiture Assets are sold to an Acquirer(s) or transferred to a Divestiture Trustee pursuant to Section V of the proposed Final Judgment. Nothing in this Stipulation shall be interpreted to prevent the

8

Management Trustee from becoming the Divestiture Trustee pursuant to Section V of the proposed Final Judgment.

B. Prior to the closing of the Transaction, defendants shall enter into a trust agreement with the Management Trustee, subject to the approval of plaintiff United States, and with respect to Divestiture Assets located in Vermont upon consultation with plaintiff Vermont, in its sole discretion, that will grant the rights, powers, and authorities necessary to permit him to perform the duties and responsibilities of the Management Trustee pursuant to this Stipulation. The trust agreement shall enable the Management Trustee, on or before the date of the closing of the Transaction, to assume all rights, powers, and authorities necessary to perform his duties and responsibilities, pursuant to this Stipulation and the proposed Final Judgment and consistent with their purposes. Any appointed Management Trustee shall serve at the cost and expense of defendants, on such terms and conditions as plaintiff United States approves, with a fee arrangement that is reasonable in light of the person's experience and responsibilities.

C. The Management Trustee will have the following powers and responsibilities with respect to the Divestiture Assets:

(1) the Management Trustee will have the power to manage the Divestiture Assets in the ordinary course of business consistent with this Stipulation. Only with the prior written approval of plaintiff United States, and with respect to Divestiture Assets located in Vermont upon consultation with plaintiff Vermont, may the Management Trustee make any decision, take any action, or enter any transaction that is outside the ordinary course of business;

(2) the Management Trustee shall have a duty, consistent with the terms of this Stipulation and the proposed Final Judgment, to monitor the organization of the Divestiture

9

Assets; manage the Divestiture Assets in order to maximize their value so as to permit expeditious divestitures in a manner consistent with the proposed Final Judgment; maintain the independence of the Divestiture Assets from defendants; control and operate the Divestiture Assets to ensure that the Divestiture Assets remain an independent, ongoing, economically viable competitor to the other mobile wireless telecommunications services providers and assure defendants' compliance with their obligations pursuant to this Stipulation and the proposed Final Judgment;

(3) the Management Trustee shall have the authority to retain, at the cost and expense of defendants, such consultants, accountants, attorneys, and other representatives and assistants as are reasonably necessary to carry out the Management Trustee's duties and responsibilities;

(4) the Management Trustee and any consultants, accountants, attorneys, and any other persons retained by the Management Trustee, shall have full and complete access to all personnel, books, records, documents, and facilities of the Divestiture Assets or to any other relevant information as the Management Trustee may reasonably request, including, but not limited to, all documents and records kept in the normal course of business that relate to the Divestiture Assets. Defendants shall develop such financial or other information as the Management Trustee may reasonably request and shall cooperate with the Management Trustee. Defendants shall take no action to interfere with or impede the Management Trustee's ability to monitor defendants' compliance with this Stipulation and the proposed Final Judgment or otherwise to perform his duties and responsibilities consistent with the terms of this Stipulation and the proposed Final Judgment;

10

(5) the Management Trustee will ensure that the Divestiture Assets shall be staffed with sufficient employees to maintain their viability and competitiveness. To the extent that any employee whose principal responsibilities relate to the Divestiture Assets leaves or has left the Divestiture Assets prior to divestiture of the Divestiture Assets, the Management Trustee may replace departing or departed employees with persons who have similar experience and expertise or determine not to replace such departing or departed employees; and

(6) 30 days after the Management Trustee has been appointed by the Court, and thereafter on the 25th day of each month until the Divestiture Assets are either transferred to an Acquirer(s) or to the Divestiture Trustee, the Management Trustee shall report in writing to plaintiffs concerning the efforts to accomplish the purposes of this Stipulation and the proposed Final Judgment. Included within that report shall be the Management Trustee's assessment of the extent to which the Divestiture Assets are meeting (or exceeding) their projected goals as are reflected in existing or revised operating plans, budgets, projections or any other regularly prepared financial statements and the extent to which defendants are fulfilling their responsibilities under this Stipulation and the proposed Final Judgment.

D. The following limitations shall apply to the Management Trustee:

(1) the Management Trustee shall not be involved, in any way, in the operations of the other businesses of defendants;

(2) the Management Trustee shall have no financial interests affected by defendants' revenues, profits or profit margins, except that the Management Trustee's compensation for managing the Divestiture Assets may include economic incentives dependent on the financial performance of the Divestiture Assets provided that those incentives are

11

consistent with the objectives of this Stipulation and the proposed Final Judgment and are approved by plaintiff United States; and

(3)  the Management Trustee shall be prohibited from performing any further work for defendants for one (1) year after the close of the divestiture transactions.

E. Defendants and the Management Trustee will take all reasonable efforts to preserve the confidentiality of information that is material to the operation of either the Divestiture Assets or defendants' businesses.  Defendants' personnel supplying services to the Divestiture Assets pursuant to this Stipulation must retain and maintain the confidentiality of any and all confidential information material to the Divestiture Assets.  Except as permitted by this Stipulation and the proposed Final Judgment, such persons shall be prohibited from providing, discussing, exchanging, circulating or otherwise furnishing the confidential information of the Divestiture Assets to or with any person whose employment involves any of defendants' businesses, except as necessary to fulfill the purposes of this Stipulation and the proposed Final Judgment.

F. If in the judgment of the Management Trustee, defendants fail to provide the services listed in Section VI of this Stipulation to the satisfaction of the Management Trustee, upon notification to defendants and approval by plaintiff United States, the Management Trustee may engage third parties unaffiliated with the defendants to provide those services for the Divestiture Assets, at the cost and expense of defendants, provided that defendants may have reasonable access to necessary information to satisfy themselves that after the services have been provided, the Divestiture Assets are in compliance with all applicable laws, rules, and regulations.

G. At the option of the Management Trustee, defendants may also provide other products and services on an arms-length basis, provided that the Management Trustee is not obligated to obtain any other product or service from defendants and may acquire any such products or services from third parties unaffiliated with defendants.

H. If the Management Trustee ceases to act or fails to act diligently and consistently with the purposes of this Stipulation and the proposed Final Judgment, if the Management Trustee proposed by plaintiff United States is not approved by this Court or resigns, or if for any other reason the Management Trustee ceases to serve in his or her capacity as Management Trustee, plaintiff United States, and with respect to Divestiture Assets located in Vermont upon consultation with plaintiff Vermont, may select a substitute Management Trustee. In this event, plaintiff United States will identify to defendants the individual or entity it proposes to select as Management Trustee. Defendants must make any objection to this selection within five (5) business days after the United States notifies defendants of the substitute Management Trustee's selection. Upon application of plaintiff United States, the Court shall approve and appoint a substitute Management Trustee. Within five (5) business days of such appointment, defendants shall enter into a trust agreement with the substitute Management Trustee subject to the approval of plaintiff United States in its sole discretion as described in Section V.B of this Stipulation.

## VI. PRESERVATION OF ASSETS

Until the divestitures required by the proposed Final Judgment have been accomplished, except as otherwise approved in advance in writing by plaintiff United States:

A. Defendants and the Management Trustee shall preserve, maintain, and continue to support the Divestiture Assets, take all steps necessary to manage the Divestiture Assets in order

13

to maximize their competitiveness, revenue, profitability and viability and to permit expeditious divestitures in a manner consistent with this Stipulation and the proposed Final Judgment.

B. The Divestiture Assets shall be operated by the Management Trustee as part of an independent, ongoing, economically viable and competitive business to other mobile wireless telecommunications services providers operating in the same license area and operated so that these assets are maintained or increased in value. Defendants and the Management Trustee shall take all steps necessary to ensure that:

(1) the management, sales, and operations of the Divestiture Assets are independent from defendants' other operations; provided however, that at the request of the Management Trustee, defendants shall include the marketing, pricing and sales of the mobile wireless telecommunications services generated by the Divestiture Assets in the license areas served by the Divestiture Assets within its marketing, promotional, and service offerings, in the ordinary course of business, in any national, regional, and local marketing programs. Nothing in this Section shall prohibit the Management Trustee from independently developing reasonable marketing, sales, pricing or promotional offers for the mobile wireless telecommunications services generated by the Divestiture Assets, which shall be funded and supported by defendants;

(2) the Divestiture Assets are maintained by adhering to normal and planned repair, capital improvement, upgrade and maintenance schedules or at a greater level if necessary to insure that the Divestiture Assets remain competitive;

(3) the books, records, competitively sensitive sales, marketing and pricing information, and decision-making concerning marketing, pricing or sales of mobile wireless

14

telecommunications services generated by the Divestiture Assets will be kept separate and apart from defendants' other operations; and

(4) the management of the Divestiture Assets acts to maintain and increase the sales and revenues of the Divestiture Assets, and maintain, at a minimum, at previously approved levels for 2007 or 2008, whichever are higher, all promotional, advertising, sales, marketing, and technical support for the Divestiture Assets.

C. Defendants shall take no action that would jeopardize, delay, or impede the sale of the Divestiture Assets nor shall defendants take any action that would influence or interfere with the ability of any Divestiture Trustee appointed pursuant to the proposed Final Judgment to operate and manage the Divestiture Assets or to complete the divestitures pursuant to the proposed Final Judgment to an Acquirer(s) acceptable to plaintiff United States, and with respect to Divestiture Assets located in Vermont upon consultation with plaintiff Vermont.

D. Defendants shall provide sufficient working capital and lines and sources of credit as deemed necessary by the Management Trustee to continue to maintain the Divestiture Assets consistent with this Stipulation.

E. Unless otherwise agreed to by plaintiff United States in its sole discretion, defendants shall resolve all outstanding obligations related to the Divestiture Assets including but not limited to agent and employee compensation, vendors and landlords within thirty (30) days of closing the Transaction.

F. Except (1) as recommended by the Management Trustee and approved by plaintiff United States, and with respect to Divestiture Assets located in Vermont upon consultation with plaintiff Vermont, or (2) as part of a divestiture approved by plaintiff United States in accordance

15

with the terms of the proposed Final Judgment, defendants shall not remove, sell, lease, assign, transfer, pledge or otherwise dispose of any of the Divestiture Assets outside the ordinary course of business.

G. The Management Trustee, with defendants' cooperation consistent with this Stipulation and the proposed Final Judgment, shall maintain, in accordance with sound accounting principles, separate, accurate, and complete financial ledgers, books and records that report on a periodic basis, such as the last business day of every month, consistent with past practices, the assets, liabilities, expenses, revenues, and income of the Divestiture Assets. As part of defendants' cooperation:

(1) prior to the closing of the Transaction, defendants will notify plaintiffs in writing of the steps defendants have taken to comply with this Section. If the Transaction has not closed within seven (7) days after the filing of the Complaint, on that day defendants will submit to plaintiffs a detailed statement of how defendants will comply with Section VI.A prior to the closing of the Transaction, including but not limited to: (a) marketing plans for the sale of mobile wireless telecommunications services by the mobile wireless businesses to be divested, including customer retention plans and promotions; (b) the designation of a management team who will have responsibility for and manage the Divestiture Assets prior to the closing of the Transaction, identifying any changes from pre-filing staffing; (c) plans for retention of employees and payment of retention bonuses to employees whose primary duties related to the mobile wireless businesses to be divested; and (d) plans for network maintenance, repair improvements, and upgrades of the Divestiture Assets;

16

(2) at least 15 days prior to the closing of the Transaction, unless such time is waived or shortened by plaintiff United States, defendants will provide to the Management Trustee and plaintiffs, for (i) Burlington VT MSA (CMA 248); (ii) Vermont RSA 1 (CMA 679) and Vermont RSA 2 (CMA 680); (iii) New York RSA 2 (CMA 560) and (iv) Washington RSA 2 (CMA 694) and Washington RSA 3 (CMA 695), a separate financial report for each of these divested geographic areas, and detailed management reports describing existing and future plans for human resources, marketing, network upgrades and capital expenditures in each divestiture market, and the extent to which each plan or project has been completed. Defendants will produce these reports in a form and with content that is acceptable to the Management Trustee and the United States; and

(3) at least 15 days prior to the closing of the Transaction, unless such time is waived or shortened by plaintiff United States, defendants will provide all reports regularly prepared by defendant RCC that measure sales activity for (i) Burlington VT MSA (CMA 248); (ii) Vermont RSA 1 (CMA 679) and Vermont RSA 2 (CMA 680); (iii) New York RSA 2 (CMA 560) and (iv) Washington RSA 2 (CMA 694) and Washington RSA 3 (CMA 695) that are in a form and with content acceptable to the Management Trustee and plaintiff United States.

H. If a Management Trustee has been appointed by the Court, 15 days prior to the closing of the Transaction, defendants shall identify, by name and title, to the Management Trustee and plaintiff United States, sufficient employees for each of the Divestiture Assets who are familiar with and have had responsibility for the management, operation, marketing, and sales of the Divestiture Assets, to assist the Management Trustee with his duties and responsibilities hereunder. No later than 7 days prior to the closing of the Transaction, upon approval of the

Management Trustee and plaintiff United States, defendants shall appoint sufficient employees for each of the Divestiture Assets who are familiar with and have had responsibility for the management, operation, marketing, and sales of the Divestiture Assets, to assist the Management Trustee with his duties and responsibilities hereunder. Defendants may offer a bonus or severance to employees whose primary employment responsibilities relate to the Divestiture Assets, that continue their employment until divestiture (in addition to any other bonus or severance to which the employees would otherwise be entitled).

I.    Until the Transaction is consummated, defendant RCC will operate the Divestiture Assets in the same fully competitive manner as its other mobile wireless services businesses and defendant Verizon will not influence or attempt to influence the operation of the Divestiture Assets pending their divestiture. Following consummation of the Transaction, except for employees (1) whose primary employment responsibilities relate to the Divestiture Assets, or (2) who are involved in providing support services to the Divestiture Assets pursuant to Sections V and VI of this Stipulation and Section V of the proposed Final Judgment, defendants shall not permit any other of their employees, officers, agents, or directors to be involved in the operations of the Divestiture Assets, including but not limited to decision making concerning marketing, pricing or sales of mobile wireless telecommunications services generated by the Divestiture Assets.

J. Except as required by law in the course of (1) complying with this Stipulation and the proposed Final Judgment; (2) overseeing compliance with policies and standards concerning the safety, health, and environmental aspects of the operations of the Divestiture Assets and the integrity of their financial controls; (3) defending legal claims, investigations or enforcement

18

actions threatened or brought against the Divestiture Assets; or (4) obtaining legal advice,

defendants' employees (excluding employees (a) whose primary employment responsibilities

relate to the Divestiture Assets, or (b) who are involved in providing support services to the

Divestiture Assets pursuant to Sections V and VI of this Stipulation and Section V of the

proposed Final Judgment) shall not receive, or have access to, or use any material confidential

information, not in the public domain, of the Divestiture Assets. Defendants may receive

aggregate financial information relating to the Divestiture Assets to the extent necessary to allow

defendants to prepare the defendants' consolidated financial reports, tax returns, reports required

by securities laws, and personnel reports. Any such information that is obtained pursuant to this

subparagraph shall be used only for the purposes set forth in this subparagraph.

K.  Until the Divestiture Assets are divested to an Acquirer(s) acceptable to plaintiff

United States pursuant to the Final Judgment, defendants shall provide to the Divestiture Assets,

at no cost, support services needed to maintain the Divestiture Assets in the ordinary course of

business, including but not limited to:

(1) federal and state regulatory policy development and compliance;

(2) human resources administrative services;

(3) environmental, health and safety services, and developing corporate

policies and insuring compliance with federal and state regulations and corporate

policies;

(4) preparation of tax returns;

(5) financial accounting and reporting services;

(6) audit services;

(7)  legal services;

(8)  routine network maintenance, repair, improvements, and upgrades;

(9)  switching, call completion, and other services necessary to allow subscribers to use mobile wireless services and complete calls;

(10)  billing, customer care and customer service related functions necessary to maintain the subscriber account and relationship;

(11)  for each retail and indirect sales outlet, a sixty (60) day supply of inventory, including both handsets and accessories, branded as directed by the Management Trustee, based on each outlet's average sales for the prior two (2) months, and if the Management Trustee requests, RCC shall make available in sufficient quantities, branded as directed by the Management Trustee, handsets and accessories, introduced by RCC in similar markets that are compatible with the network in the two divestiture markets;

(12)  the individual financial reports described in Section VI.F shall be provided on a monthly basis; and

(13)  the sales reports described in Section VI.G shall be provided on a daily basis.

## VII.  DURATION OF ASSET PRESERVATION OBLIGATIONS

Defendants' obligations under this Preservation of Assets Stipulation and Order shall remain in effect until (1) consummation of the divestitures required by the proposed Final Judgment or (2) until further order of the Court.  If the United States voluntarily dismisses the

Complaint in this matter, Defendants are released from all further obligations under this

Preservation of Assets Stipulation and Order.


Dated: June 10, 2008                                    Respectfully submitted,


FOR PLAINTIFF UNITED STATES              FOR DEFENDANT VERIZON
                                                             COMMUNICATIONS INC

Hillary B. Burchuk (D.C. Bar No. 366755)      John Thorne (D.C. Bar No. 421351)
Lawrence M. Frankel (D.C. Bar No. 441532)   Senior Vice President and Deputy
Deborah Roy (D.C. Bar No. 452573)                 General Counsel
Attorneys, Telecommunications & Media          David E. Wheeler (D.C. Bar No. 473404)
Enforcement Section                                       Vice President and Associate
Antitrust Division                                             General Counsel

U.S. Department of Justice                          Verizon Communications Inc.
City Center Building                                  1515 N. Courthouse Road
1401 H Street, N.W., Suite 8000                Suite 500
Washington, D.C.  20530                          Arlington, VA 22201-2909
(202) 514-5621                                        (703) 351-3900
Facsimile: (202) 514-6381                        Facsimile (703) 351-3656


                                                             FOR DEFENDANT RURAL CELLULAR
                                                             CORPORATION

                                                             Michael L. Weiner
                                                             Brian C. Mohr (D.C. Bar No. 385983)
                                                             Skadden, Arps, Slate, Meagher & Flom LLP
                                                             Four Times Square
                                                             New York, New York 10036-6522
                                                             (212) 735-2632
                                                             Facsimile: (917) 777-2632

STATE OF VERMONT
WILLIAM H. SORRELL
Vermont Attorney General

Julie Brill
Assistant Attorney General and
Director, Antitrust

Jennifer Giaimo
Assistant Attorney General

Office of the Vermont Attorney General
109 State Street
Montpelier, Vermont  05609-1001
(802) 828-3658
Facsimile: (802) 828-2154

O R D E R

IT IS SO ORDERED by the Court, this ___ day of ___ 2008.

United States District Judge

22